Good morning and may it please the Court, I'm Natasha Royd. I'm Counsel for Plaintiff and Appellant. I would first summarize my argument by indicating that I believe that the District Court based its decision in denying fees on an unsupported extrapolation of the decision in K and on an overbroad interpretation of the Ninth Circuit decision in Ford and perhaps most importantly, without the benefit of the Ninth Circuit decision in Weisberg. And I say that because the District Court's opinion throughout the order refers to the Ford decision in very broad terms that I would submit are no longer accurate in view of the Ninth Circuit's limitation of the Ford's decision in Weisberg. And I also say that because the District Court rejected the opinions from other circuits and other district courts that I would submit a much more apropos and closer to the situation at hand because of its view of what the Ninth Circuit meant in Ford. And finally, I say that because the court, the District Court used the terminology Let's, let's, the District Court did what it did and we're aware of the cases. Let's address the question that's posed by K and by Ford, which is the notion that in these cases, the question of whether the relationship of the attorney is such that it precludes or biases independent judgment and introduces a degree of emotional bias into the proceeding, that's the Supreme Court's general concept in K. So how do, how do you distinguish the situation you find yourself in, in this case? I would distinguish it on three bases, Your Honor. Number one, I think it's important to, for me to challenge, first of all, the notion that K applies the phrase and standard of not only independent, but emotionally detached. So I would first argue that emotionally detached is an extrapolation from K that should not be applied in civil rights cases to begin with. But beyond that, even if you were to apply that language, then I would say in this circumstance, we have a situation where the relationship between plaintiff's counsel and plaintiff is entirely unrecognized under Federal law. It is a relationship, notwithstanding the marriage under California law, under Federal law, which is what we have to look at in determining whether the fees are owed, is Federal law. And under Federal law, and under DOMA, and a number of other decisions, that relationship has no legal significance whatsoever. So if you were to focus on the relationship itself versus some other factors, then I would say what the district court did, and what I think if this Court affirms it would do, is it would give gay couples who have zero rights under Federal law the responsibilities of that marriage if the court were to apply that standard. Why don't we just take that aspect out and assume we don't have to reach it, because essentially the issue is can the spouse, be it a gay spouse or a straight spouse, can a spouse provide the kind of representation. Now, I will confess I had some question about the emotional content of the standard as well, but I went back and looking at Kay, what Justice Stevens did say was that, among other things, making sure that reason rather than emotion dictates the proper tactical response. So you say, well, it's an extrapolation, but isn't that the kind of thing that Justice Stevens worked into his formulation? I would respectfully disagree with the use of the emotionally detached as it applies to beyond the standard in Kay. And the reason I would do that, Your Honor, is because I think it's way too broad of a standard. Many counsel are emotionally involved in the outcome of a case. A grandmother in Weisberg certainly wanted a certain outcome from her grandchild, and yet the Court refused to extend the bright-line rule in Weisberg to other family members, and didn't just say grandmother, but other family members. And I would also submit that I do not believe it is appropriate for a court in determining attorney's fees to look at solely at the relationship, whether it's a gay spouse or a straight spouse. It may not be, but, counsel, my — I'm just saying, I'm going to ask you a question directed to Justice Stevens. Whether you and I might agree about emotion in grandparents — I'm a grandparent, I'm glad Weisberg came out the way it did — whether you and I might agree about emotion in grandparents — I'm a grandparent, I'm glad Weisberg came out the way it did — if I don't want to represent anybody in my family. I apologize if I didn't answer. But Justice Stevens does inject the concept of emotion. So trying to understand where you say — we've said Ford tells us that if it's a parent-child relationship, then it doesn't work. Weisberg says if it gets to the grandparent, now we're dealing with spouse, the attorney's spouse. So how do you address the emotion in that context? Your Honor, I don't — I think that to inquire into a relationship where there is a spouse, I do not believe you can draw a bright line and under — either under Kay or even under Ford, eliminate spouse as a bright line. And I don't think the spouse, instead of being emotionally attached to a case, could in fact be the best representative, the most trusted representative. And in this case in particular, Your Honor, when we're dealing with the choice of counsel in a civil rights matter, and in this case with the spouse representing her spouse under California law, throughout the proceedings in the underlying case, and in fact in the instant case, with the evidence being that at every single step of the litigation, there is no evidence whatsoever of emotional actions or emotional attachment or any of that. The only evidence is that it's a well-reasoned litigation, that it was a reserve litigation, and at the first opportunity when an appropriate settlement was presented, it was done. So I would submit a bright line should not be drawn. Counsel, I have two and possibly three questions, because it's not clear to me from reading the district judge's decision that he made a categorical decision that a spouse could never be compensated as an attorney. Did the county argue that there were special circumstances that justified refusing to make an award under Section 1988? I do not believe so, Your Honor, and I know you're referring to the rule being that fees are awarded except for unusual circumstances, and I don't believe they made that below. My question is prompted by the conclusion in the decision that caused me to wonder whether this was a categorical decision that causes us to have to analogize it to K or whether it's a fact-specific decision. After discussing all the cases but also the facts, the judge concluded that the court finds that in the current situation, Roy cannot receive attorney's fees because she's not an independent, emotionally detached counsel, and it, as I said, prompted me to wonder whether he was not excluding spouses categorically, but saying it looks to me like this was a device to engineer getting attorney's fees, and I don't think it's appropriate equitably to do that. Yes, Your Honor, I could address that very clearly. The decision, the district court's opinion is replete with references to Roy and Rickley being spouses. The court, in fact, cites the Straus decision indicating that we were married under California law. The court, in our brief, I cited, I think, four or five references in the short opinion to the spousal relationship. And the court does not go into any detail, and there were no arguments about it being, having unusual circumstances, which are defined under the law as whether it's an easy case to achieve, and certainly this wasn't argued to be an easy result to achieve. So to answer your question, Your Honor, I do believe that the court did two things. I believe the court did use the spousal relationship as a determining factor. And I also think that in reaching that decision, the court was convinced to the much broader application of Ford, and in fact, in the opinion itself on pages 9, 10, and I believe 14, the court actually says that. The court says because the Ninth Circuit specifically outlawed recovery of fees by a parent and child as separate entities, that the parent cannot represent the child, then in this case, Roy cannot recover fees for representing Rickley. Thank you. All right. Thank you. May it please the Court, Deborah Fox for the County of Los Angeles. I think this case presents just a very discreet issue, that being whether the district court got the decision right when it found that Attorney Roy, who was the co-owner, aggrieved party, potential witness, and spouse, domestic partner, was not entitled to attorney's fees under Section 1988. Did the district court make any factual findings that Ms. Royt was not emotionally detached? Well, the court says specifically at page 11 of Volume 1, that Royt cannot receive attorney's fees because she is not an independent. Emotionally detached counsel. I didn't ask that question very well, and I apologize. Did the district court make any factual findings that in the conduct of the litigation, Attorney Royt, in specific instances, behaved, performed, acted in a way that demonstrated that she was not emotionally detached? Yes. And I believe those are found at the preceding pages 9 and 10, when the court discusses her relationship with the ownership of the property, and discusses specifically taking depositions and speaking in the third party. So I believe that the court ultimately found that it was a de facto pro se relationship. I think that those factual findings support that. And also, we offered our drawing from, I think the court's reflecting on the artifice of keeping fees in the family, which the Kaye case talks about. I would agree that I don't think that there should be some notion that there shouldn't be any emotion, and that that was not part of the discussion in Kaye. You know, I practiced law for 25 years. I had some clients that I absolutely adored. They were my great friends, and they are still my great friends to the extent that I would never sit on their cases. Was I emotionally attached in a way that I shouldn't represent them? I certainly doubt it, Your Honor. The particular issue, though, at play when looking at emotion is to examine whether or not you are indeed getting that independent counsel. So the emotion is one of the factors that they enumerated in talking about the particular ethical considerations as well that may come into play in heated litigation, and the ability to have that detached, or at least that sort of bird's-eye view of making decisions in litigation. Let me see if I can get at it with another question. Did the district court determine that any aspect of the amount of hours, or the billable rate, or the conduct of the litigation was tied to the emotional lack of emotional detachment? I don't think that the court found that anything in the amount of hours or the billing rate was tied to emotional detachment. And the county filed objections to the fees themselves. If she were allowed to have fees, you did file objections as to some of the amounts and that sort of thing, didn't you? We did. You made a record on that. Yes, we did. And let me put to you the same question I put to appellants counsel. Did the county argue to the district judge that there were special circumstances that justified not making an award in this case, even if there were, the law permitted an award to be made to a spouse who's an attorney? I don't believe that we teed it up quite in that fashion. I think that through our briefing, we certainly argued that under the reasoning of Kay and Ford, this was one of the circumstances when, indeed, it should be the exception to the award of attorney's fees under Section 1988. Well, that blurs the distinction between a categorical approach, for example, a parent can never get fees, and a more particularized, individualized approach that would permit a spouse to get fees, but not in this particular case. So I think it's either one or the other. The judge either dealt with this categorically, as say in Kay, or he recognized he had some discretion and exercised it not to make an award. Which do you think, which was it? My understanding of Judge Wilson's decision that he was determining under the rulings of Kay and Ford that this was not a circumstance where the attorney should be awarded. So categorically, you understand, you argued and you understand he decided that a spouse could never be awarded attorney's fees. You know, I don't think he did, Your Honor. I don't think he did draw that bright line. We certainly argued that in our pleading before this Court, that we thought that it would make good public policy sense for the reason we called out in our brief, that there should be such a bright line. But I think in the ruling by Judge Wilson in his motion to reconsider his relationship, that was the touchstone. Where is the decision on the motion that we consider in the record? I believe that's at page 15, Your Honor. I think that's volume two. Page 15. Your Honor, as well, we think that particularly here we don't think that the Weisberg decision by this circuit changes the results. We don't think that it adds anything new. Indeed, it has a very short, I think it's about two or three paragraphs, discussion of the analysis, and really does not go into that sort of analysis under K about whether or not this was a situation that, indeed, we would want to make sure we had an incentive to have independent counsel. Well, what are you extracting from this ruling, then? I'm not quite sure I understand. You think that Weisberg isn't applicable because it, and controlling because it doesn't examine the impact of the relationship under K, but this one does? It certainly seemed to me that in the reading of Weisberg that it was a very superficial examination. It simply said that the grandmother did not meet the definition of a parent and did not go into that analysis under K. I'm saying K, I'm saying Ford does not go beyond the immediate parent. I'm sorry? It said they were not going to extend Ford beyond the immediate parent. Correct. And you're calling that superficial? Well, it didn't have much of an analysis as to the K factors. It didn't talk about that incentive to get independent counsel. And so what you're saying is Judge Wilson did and, therefore, it is or isn't a categorical ruling. What is it that he did in this case that says it was looking specifically only at this one time only? I think he, on pages 9 through 11, he looks at the specific issues as to this particular attorney and the relationship and notes those various factors. Okay. But, see, the problem I have is there is nothing that I can detect in the record to the extent that there was any problem of over-lawyering the case or compromising the case that couldn't be addressed in adjusting the amount of fees or the entitlement to fees on that basis. But given Judge Wilson's extensive discussion of Ford and K, it's very hard to come away from this as not seeing this as a categorical ruling at base. Now, I understand that he disclaimed it at least on the domestic partnership marriage status. He put that in his denial of the motion to reconsider. But the difficulty I have in this case in the way it's been articulated and all of his careful analysis of the opinions, I don't fault him for that, but it's very difficult to come away from this without the impression that he believes Ford, by disqualifying parent-child, is basically transferable to spousal relationships. And extending it that far, particularly when our own court has, superficially as you may think it is, has also found the bright line of Ford not extendable beyond the immediate parents, I think that's the difficulty I have. So to say Weisberg is superficial kind of doesn't cut it with me. I would agree with the court that I do believe that, to be intellectually honest with this case, that it does cry out for a categorical exemption under Ford. And that's, of course, why we briefed that issue. I don't see that Weisberg is a stumbling point to get there because of the analysis as it is called forth in Weisberg. The Kay case has a much more extensive analysis of that statutory purpose. There was never any issue, just as in Ford and Kay,  I'm sorry. You did move to disqualify Ms. Roy, did you not? No, we never made that motion. There was a stipulation that was entered into between the parties so that she would not be a witness in the case. And so to avoid having to take her deposition and to avoid making that motion. The motion was never brought? That is correct. What was the issue you did? The issue arose and was discussed with the court at the summary judgment hearing and then the parties worked it out through a stipulation. And I believe that's in the supplemental excerpt of record. And in that hearing, did you tell Judge Wilson that you thought she could not be emotionally detached to conduct the case? That issue didn't tee up quite that way. I didn't ask you if the issue came up. Did you tell Judge Wilson in that context that the county doubted whether Ms. Roy had the emotional independence to conduct the case appropriately? No, we did not. And just to clarify my understanding in this motion for reconsideration, the order on the motion of reconsideration, when Judge Wilson said that he, did you raise a DOMA argument there? Because it appears he's saying here whether it's a legally valid marriage or a de facto marriage is not material to my analysis. Ms. Roy is the functional equivalent of the spouse and therefore that's why I denied it. Is that what he's saying, what you argued and what he's saying here? The DOMA argument was put forth indeed by the plaintiff below. We argued that we did not believe DOMA yielded a different result. Thank you. I'll give you a minute. I just briefly wanted to point out to the Court in answering Judge Hawkins' questions and also the rest of the Court in terms of the conduct of the litigation itself that the record was such and we addressed it I think sufficiently in our brief that at the outset a resolution was proposed simply by myself as counsel to withdraw the notice as a violation and the matter would simply resolve itself. The county rejected it. As counsel I then suggested that we stay the matter so that the timelines do not vary. I think that's in your brief. Yes, Your Honor. And that's really, so there was no finding of any type of emotional conduct or overbilling and in fact the bills themselves were in my view quite sparse and really only billed. Okay, that's all in your brief. Thank you. And can I just ask what should we make of this language at the end of the order denying reconsideration where Judge Wilson says the Court discussed the marriage as evidence of a de facto relationship rather than a legal one and the Court's reasoning did not rely on the legal relationship between them? My honest take on that was that I do think that the Court recognized that it was to the standard of a spouse because of DOMA but stuck with its categorical rejection of attorney's fees and saying that the relationship is de facto spouse I think only reinforces his thought process that that's exactly what he did in a categorical fashion. Thank you. Thank you. Thank you very much, counsel. Thank you both, counsel. Case is submitted. Thank you. That brings us to the next case on calendar which is Serafoam v. Acceptance Indemnity Insurance Company.
judges: Wolf, Hawkins, Fisher